THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| JEFFERY RUSSELL FINLAYSON,<br><br>Petitioner,<br><br>v.<br><br>ROBERT POWELL,<br><br>Respondent. | **MEMORANDUM DECISION & ORDER GRANTING MOTION TO DISMISS**<br><br>Case No. 2:19-cv-599-DBB<br><br>District Judge David Barlow |

Petitioner, Jeffery Russell Finlayson, requests federal habeas relief regarding his Utah state convictions.[1] Having carefully considered germane documents and law, the court concludes that Petitioner's petition is inexcusably untimely.[2] The petition is therefore dismissed with prejudice.

## I.   RELEVANT TIMELINE

- 12/1/11   Petitioner was sentenced to terms of six-years-to-life (aggravated kidnaping); zero-to-five years (aggravated assault); and 180 days (damage to or interruption of communication device). (ECF No. 1-6, at 108 (state dist. ct. case no. 101904639).)

- 11/28/14   Utah Court of Appeals affirmed the convictions on direct appeal. *State v. Finlayson*, 362 P.3d 926, 930 (Utah App. 2014).

- 2/23/15   Utah Supreme Court denied certiorari review on direct appeal. *State v. Finlayson*, 343 P.3d 708 (Utah 2015) (table).

- 5/25/15   Date upon which the deadline passed to file certiorari petition with United States Supreme Court, Sup. Ct. R. 13.1 (giving 90 days to file "petition for a writ of

---

[1] *See* 28 U.S.C.S. § 2254 (2021). Section 2254 reads in pertinent part:
    [A] district court shall entertain an application for a writ of habeas corpus in
    behalf of a person in custody pursuant to the judgment of a State court only on
    the ground that he is in custody in violation of the Constitution or laws or
    treaties of the United States.
28 U.S.C.S. 2254(a) (2021).
[2] *See id*. § 2244(d)(1).

1

|  |  |
|---|---|
|  | certiorari to review a judgment in any case . . . entered by a state court of last resort"), signaling conclusion of direct review. |
| • 2/23/16[3] | State post-conviction petition (PCP) filed. (ECF No. 10-3, at 1 (state dist. ct. case no. 160901505).) |
| • 8/17/18 | Utah Court of Appeals affirmed post-conviction court's decision denying relief. *Finlayson v. State*, No. 20180374-CA, slip op. (Utah App. August 17, 2018). |
| • 9/6/18 | Utah Supreme Court denied certiorari review on PCP. (ECF No. 10-5.) |
| • 8/5/19[4] | Filing of federal petition. (ECF No. 1-6, at 217.) |
| • 9/28/20 | Filing of Respondent's Motion to Dismiss, arguing petition is inexcusably untimely. (ECF No. 10.) |
| • 6/4/21 to 11/18/21 | Filing of Petitioner's opposition to Motion to Dismiss, supplemental evidence, and request for hearing, together with Respondent's responsive filings. (ECF Nos. 19, 21-22, 25, 30-35.) |

## II.   ANALYSIS

Federal statute sets a one-year period of limitation to file a habeas-corpus petition.[5] The period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."[6] So, when the time expired for Petitioner to seek certiorari review in the United States Supreme Court on May 25, 2015, the one-year limitation period began running.

---

[3] "Although the petition was stamped by the court as filed on February 29, 2016, it was signed and dated February 23, 2016 (case no. 160901505). The petition was therefore found to be timely under Utah's prison mailbox rule." (ECF No. 10 at 2 n.2.)

[4] The petition was docketed on August 26, 2019, but Petitioner asserts entitlement "to application of the prison mailbox rule and states that he signed his federal habeas petition and put it in the prison mail system on August 5, 2019." (ECF No. 10 at 15 n.5; *see also* ECF No. 1-6 at 217 (containing Plaintiff's request to this Court, saying, "When you receive my habeas petition, please file it on August 5, 2019").) Respondent points out that "even giving [Petitioner] the benefit of the extra 21 days from August 5 until August 26, his federal habeas petition is still 242 days late." (*Id.*) For the sake of this Order, the court deems the federal petition filed August 5, 2019.

[5] 28 U.S.C.S. § 2244(d)(1) (2021).

[6] *Id*. § 2244(d)(1)(A).

## A.     STATUTORY TOLLING

The limitation period "is tolled or suspended during the pendency of a state application for post-conviction relief properly filed during the limitations period."[7] A "state postconviction application 'remains pending' 'until the application has achieved final resolution through the State's postconviction procedures.'"[8] Once the post-conviction case ends in state court, the one-year limitation period begins to run again.

Tolling, however, does not revive the limitations period--i.e., restart the clock at zero. It serves only to suspend a clock that has not already run.[9] Thus, any time between when a petitioner's direct appeal becomes final and when he files his petition for state post-conviction relief is counted in the limitations period. And, any time between when the state post-conviction action concludes and before a petitioner's habeas petition is filed also counts toward the limitations period because state-collateral review only pauses the one-year period; it does not delay its start.[10]

In other words, time elapsing after a petitioner's conviction becomes final on direct review, but before a state post-conviction petition is filed, and time after final disposition of the petitioner's post-conviction proceedings, but before the filing of the federal habeas petition, *aggregate* to count against the one-year-limitation period.[11]

---

[7] *May v. Workman*, 339 F.3d 1236, 1237 (10th Cir. 2003) (citing 28 U.S.C.S. § 2244(d)(2) (2021)).
[8] *Lawrence v. Florida*, 549 U.S. 327, 332 (2007) (quoting *Carey v. Saffold,* 536 U.S. 214, 220 (2002)); *see Fisher v. Raemisch*, 762 F.3d 1030, 1032 (10th Cir. 2014).
[9] *See Fisher v. Gibson*, 262 F.3d 1135, 1142-43 (10th Cir. 2001); *see also Laws v. LaMarque*, 351 F.3d 919, 922 (9th Cir. 2003).
[10] *See Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000). ("[P]roper calculation of Section 2244(d)(2)'s tolling provision excludes time during which properly filed state relief applications are pending but does not reset the date from which the one-year statute of limitations begins to run.").
[11] *See Sutton v. Cain*, 722 F.3d 312, 316 n.6 (5th Cir. 2013) ("To calculate when the limitations period has run, we aggregate the time between (i) the date the petitioner's conviction became 'final' and the date the petitioner filed his state [post-conviction] application; and (ii) the date the state [post-conviction] process concluded and the date the petitioner filed his federal habeas petition.").

From May 25, 2015 (the date upon which direct appeal was final), the limitation period ran 274 days, when, on February 23, 2016, Petitioner filed his (ultimately unsuccessful) state post-conviction application and tolled the period. 91 days remained at that point. The state post-conviction action concluded on September 6, 2018, the date upon which the Utah Supreme Court denied Petitioner's certiorari petition on his PCP.[12] The period began running on that day and expired 91 days later on December 6, 2018.

Petitioner filed this federal action on August 5, 2019--242 days too late.[13] As a result, Petitioner has no ground for statutory tolling.

### B. EQUITABLE TOLLING AND EXCEPTION

Plaintiff also argues for equitable tolling, both on the basis of extraordinary circumstances and actual innocence. "Equitable tolling is 'a judicially-crafted stopping of the clock' that" is applied "'only in rare and exceptional circumstances.'"[14] It "will not be available in most cases, as extensions of time will only be granted if 'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time."[15] Examples warranting equitable tolling are "'when an adversary's conduct . . . prevents a prisoner from timely filing, or when a prisoner actively pursues judicial remedies but files a defective pleading during the statutory period.'"[16]

---

[12] ECF No. 10-5.
[13] In his Opposition to State's Motion to Dismiss for Untimely Filing, Petitioner assumes the correctness of these calculations, stating, "Petitioner is unable to verify or challenge the State's calculations because his records were lost by the prison's Property Department." (ECF No. 21, at 1.) However, Petitioner had the benefit of all the exhibits attached to Respondent's Motion to Dismiss, which contained copies of each result in his direct appeal, docket of his state PCP, and each result in his PCP appeal. (ECF No. 10-1 to 10-5.) His assumption is therefore supported by case documentation that was available to him. The court thus proceeds according to the evidence supporting the State's calculations, which it concludes are correct.
[14] *United States v. Barger*, 784 F. App'x 605, 607 (10th Cir. 2019) (unpublished) (quoting *Fisher*, 262 F.3d at 1143; Gibson v. Klinger, 232 F.3d 799, 808 (10th Cir. 2000)).
[15] *Calderon v. U.S. Dist. Ct.*, 128 F.3d 1283, 1288 (9th Cir. 1997) (citation omitted).
[16] *Stanley v. McKune*, 133 F. App'x 479, 480 (10th Cir. 2005) (quoting *Gibson*, 232 F.3d at 808 (citation omitted)).

Meanwhile, "equitable exception" refers to "actual innocence" that "'serves as a gateway through which a petitioner may pass' . . . to overcome . . . his failure to abide by the federal statute of limitations in order to have his . . . claim[s] heard on the merits."[17]

On both grounds, Petitioner "has the burden" of showing equitable tolling or an equitable exception applies.[18]

### 1. Extraordinary Circumstances

Petitioner argues that his late filing here should be excused due to "the combined effects of Petitioner's mental impairment and the contract attorney's affirmative misrepresentations," which "created extraordinary circumstances that prevented Petitioner from filing his state habeas petition for at least 300 days."[19] He further contends that "the prison's loss and destruction of Petitioner's crucial legal records in 2017, as well as Petitioner's subsequent efforts to locate and re-obtain said records from September, 2017 until June, 2019," shows that "he provably qualifies for equitable tolling for nearly two years (September, 2017 until June, 2019)."[20] Combining these two periods, Petitioner casts the entire passing and expiration of the federal period of limitation as qualifying for equitable tolling.

#### a. Timeline of Facts Relevant to Equitable-Tolling Argument[21]

- 2/23/15    Utah Supreme Court denied certiorari review on direct appeal. *State v. Finlayson*, 343 P.3d 708 (Utah 2015) (table).

- 5/25/15    Date upon which the deadline passed to file certiorari petition with United States Supreme Court, Sup. Ct. R. 13.1 (giving 90 days to file "petition for a writ of

---

[17] *Fontenot v. Crow*, 4 F.4th 982, 1030 (10th Cir. 2021) (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013)).
[18] *Lovato v. Suthers,* 42 F. App'x 400, 402 (10th Cir. 2002) (unpublished).
[19] ECF No. 21 at 23.
[20] *Id.* at 23–24.
[21] Petitioner has filed copies of a few Utah State Prison Inmate GRAMA Records Request Forms and letters to show that he has continued to seek evidence that supports his equitable-tolling arguments. (ECF No. 22 at 47, 53, 63, 69, 71.) However, it appears to the court that any further information gathering is futile, considering how obvious it is that equitable tolling does not apply here. Indeed, the court's review of Petitioner's GRAMA requests reveals that any of the information he sought would not make a difference to the court's analysis. The further discovery and hearing requested by Petitioner are thus needless.

certiorari to review a judgment in any case . . . entered by a state court of last resort"), signaling conclusion of direct review.

- 3/3/15 Petitioner's head was injured "during fight," resulting in "[l]aceration to face" and a self-report of feeling "stunned," but no loss of consciousness. (ECF No. 22, at 23, 25.) Medical provider noted, "Speech is fluent, lucid and appropriate." (*Id.* at 25.)

- 3/24/15 Hospital report states that a "Brain CT" was done, resulting in a diagnosis of, "essentially normal brain CT." (*Id.* at 27.)

- 5/25/15 Date upon which deadline passed to file certiorari petition with United States Supreme Court. Sup. Ct. R. 13.1 (giving 90 days to file "petition for a writ of certiorari to review a judgment in any case . . . entered by a state court of last resort").

- 10/16/15 Petitioner met with a contract attorney, who wrote in a memorandum, "There is a one-year statute of limitations to file a 2254 Petitioner in Federal Court. That is one year from the date your state remedies have been exhausted. Therefore, your filing of the 2254 appears to have been timely filed." (ECF No. 19-1.)

- 11/6/15 In a different case in this court, as a pro se litigant, Petitioner signed a sophisticated and intricately detailed eighty-five-page federal habeas petition. *Finlayson v. Utah*, No. 2:15-CV-818-DAK (D. Utah filed November 18, 2015) (Section 2254 habeas petition, ECF No. 1).

- 11/17/15 In a different case in this court, as a pro se litigant, Petitioner signed a sophisticated and intricately detailed eighty-seven-page Memorandum in Support of Petition for Writ of Habeas Corpus. *Id.* at ECF No. 2.

- 11/30/15 In a different case in this court, as a pro se litigant, Petitioner filed "Supplemental Exhibits." *Id.* at ECF No. 3.

- 12/16/15 A form, titled, "Inmate File Intake/Checklist," reveals that a contract attorney "conducted initial interview with" Petitioner and gave him a state-post-conviction packet. (ECF No. 19-1.)

- 2/8/16 In a different case in this court, as a pro se litigant, Petitioner filed "Request to Submit for Decision Petitioner's Motion to Reopen Time to File an Appeal, and Notice of Appeal." *Finlayson*, No. 2:15-CV-818-DAK, at ECF No. 4.

- 2/23/16 State post-conviction petition (PCP) filed. (ECF No. 10-3, at 1 (state dist. ct. case no. 160901505).)

- 8/8/17 Petitioner was hospitalized off-site for two weeks. (ECF No. 22, at 37.) His belongings were therefore inventoried; a copy of Central Utah Correctional Facility (CUCF) "Inmate Property Inventory" form shows, "12 legal pad[s]"; "5 boxes of

6

legal/public ma" [sic]; "12 inches of legal/public mate" [sic]; with a code of "(D) Disposition # 116328." (*Id.* at 5.) "All items coded 'D' on the inventory form . . . must be mailed or picked up and removed from the Institution." (*Id.* at 7.)

- 8/27/17    Upon Petitioner's return to prison from the hospital, virtually illegible copies of CUCF "Inmate Property Inventory" forms possibly show the failure to return Petitioner's 12 legal pads, 5 boxes of legal, or 12 inches of legal. (*Id.* at 11, 13, 15.)

- 9/8/17     Note on state post-conviction-case docket: Trial court filed Memorandum Decision and Order. (ECF No. 10-3, at 3.)

- 9/18/17    Note on state post-conviction-case docket: "By request, first copy of docket sent to JEFFERY RUSSELL FINLAYSON." (*Id.*)

- 9/26/17    Note on state post-conviction-case docket: "Motion to Stay Proceedings," filed by Petitioner. (*Id.*)

- 9/27/17    Note on state post-conviction-case docket: "Copy of Memorandum Decision and Order from 9/08/17 sent to defendant at Draper Prison." (*Id.*)

- 10/11/17   Note on state post-conviction-case docket: "Motion to Stay Proceedings; and Request for Records & Injunction," filed by Petitioner. (*Id.*)

- 10/16/17   Note on state post-conviction-case docket: "Notice of Appeal or Alternatively Motion for Permission to File an Interlocutory Appeal," filed by Petitioner. (*Id.*)

- 12/13/17   Note on state post-conviction-case docket: "Motion for Summary Judgment," filed by State of Utah. (*Id.* at 4.)

- 12/29/17   Notes on state post-conviction-case docket: (1) "Request for Photocopies, and for Stay of Proceedings Pending Receipts of Said Photocopies," filed by Petitioner. (*Id.*); (2) "Ruling Entry - . . . Court grants Mr. Finlayson's request for photocopies of his 65B petition." (*Id.*); and, (3) "Request copies sent to Mr. Finlayson on 12/29/2017," showing Petitioner's mailing address. (*Id.* at 4-5.)

- 1/4/18     Note on state post-conviction-case docket: "Filed: Memorandum in Opposition to State's Ex Parte Motion for Permission to File an Overlength Brief." (*Id.* at 5.)

- 2/27/18    Notes on state post-conviction-case docket: (1) "Filed: Memorandum in Opposition to State's Request to Submit for Decision State's Motion for Summary Judgment." (*Id.*); and (2) "Motion to Stay Proceedings Pending Disposition of Petitioner's 12-23-2017 Memorandum in Opposition," filed by Petitioner. (*Id.*)

- 2/28/18    Notes on state post-conviction-case docket: (1) "Correspondence [received] - Defendant's request for copy of docket." (*Id.*); and (2) "Copy of docket mailed to defendant." (*Id.*)

- 3/7/18     Note on state post-conviction-case docket: "Memorandum Decision and Order" filed. (*Id.*)

- 3/29/18     Note on state post-conviction-case docket: "Motion to Disqualify a Judge pursuant to Rule 63, Ut. R. Civ. P.," filed by Petitioner. (*Id.*)

- 3/30/18     Note on state post-conviction-case docket: "Filed order: Minute Entry- declines to recuse himself, but certifies the motion to the Associate Presiding Judge for decision." (*Id.*)

- 4/3/18     Note on state post-conviction-case docket: "Filed: Supreme Court of Utah Letter dated 4-3-2018 to Jeffery R. Finlayson - (Interlocutory appeal filed - Case #20180246 should be indicated on future filings - rules/info et al)." (*Id.*)

- 4/13/18     Note on state post-conviction-case docket: Interlocutory appeal "assigned to Court of Appeals." (*Id.*)

- 4/19/18     Note on state post-conviction-case docket: Utah Court of Appeals denied permission for interlocutory appeal. (*Id.*)

- 5/9/18     Note on state post-conviction-case docket: "Filed order: Memorandum Decision and Order- Motion for Summary Judgment is granted." (*Id.* at 6.)

- 5/21/18     Notes on state post-conviction-case docket: (1) "Notice of Appeal" filed. (*Id.*); and (2) Letter sent from Utah Court of Appeals to Petitioner, in which case number was stated, in addition to "rules/info et al." (*Id.*)

- 6/22/18     Note on state post-conviction-case docket: Letter sent from Utah Supreme Court to Petitioner, in which case number (20180494-SC) was stated for a certiorari petition, in addition to "rules/info et al." (*Id.*)

- 7/30/18     Note on state post-conviction-case docket: Letter sent from Utah Supreme Court to Petitioner, in which case number (20180582-SC) was stated for a certiorari petition, in addition to "rules/info et al." (*Id.*)

- 8/10/18     Note on state post-conviction-case docket: Utah Supreme Court order was filed, in which certiorari petition was denied. (*Id.*)

- 8/17/18     Utah Court of Appeals affirmed post-conviction court's decision denying relief. *Finlayson v. State*, No. 20180374-CA, slip op. (Utah App. August 17, 2018).

- 9/6/18     Utah Supreme Court denied certiorari review on PCP. (ECF No. 10-5.)

- 10/3/18     Note on state post-conviction-case docket: "Motion for Relief from Judgment," filed by Petitioner. (ECF No. 10-3, at 6.)

8

- 10/24/18     In a different case in this court, Petitioner's habeas counsel filed a motion for time extension in which he stated that he had been in contact with Petitioner about legal matters. *Finlayson*, No. 2:15-CV-818-DAK, ECF No. 64.

- 11/6/18      Utah Department of Corrections "Privileged Mail Form" shows that Petitioner's attorney sent him a "legal book," which was "taken back to property to go through appropriate channels." (ECF No. 22, at 19.)

- 11/28/18     In a different case in this court, Petitioner's habeas counsel filed "Petitioner's Reply to State's Response to Amended Petition," with several exhibits, including copies of state-court records from that case. *Finlayson*, No. 2:15-CV-818-DAK, ECF No. 66.

- 12/6/18      Expiration of federal habeas period of limitation.

- 12/26/18     In a different case in this court, Petitioner's habeas counsel filed, "Motion for Evidentiary Hearing." *Id.* at ECF No. 68.

- 2/14/19      In a different case in this court, Petitioner's habeas counsel filed, "Errata Re Petitioner's Reply to State's Response to Amended Petition." *Id.* at ECF No. 70.

- 2/26/19      Note on state post-conviction-case docket: Letter sent from Utah Supreme Court to Petitioner, in which case number (20190159-SC) was stated for a certiorari petition, in addition to "rules/info et al." (ECF No. 10-3, at 6.)

- 8/5/19       Filing of federal petition. (ECF No. 1-6, at 217.)

- 5/5/21       Signing of Petitioner's declaration, filed on July 13, 2021, in which he makes the following relevant statements:[22] (1) The fight on March 3, 2015 resulted in "at least three (3) traumatic brain injuries . . . that severely impaired my short-term memory and cognitive ability. I was also impaired in my ability to write and to speak." (ECF

---

[22] Plaintiff's allegations of mental impairment, contract-attorney malfeasance, and lost legal records are supported in large part by his after-the-fact (in some instances by six years) self-serving "sworn statement." Such statements are not particularly persuasive. *See Sherman v. Klenke*, 653 F. App'x 580, 585-86 (10th Cir. 2016) (unpublished) ("A nonmovant can properly oppose [SJ] with affidavits [like the verified Amended Complaint], but . . . conclusory and self-serving affidavits are not sufficient."); *Boles v. Dansdill*, 361 F. App'x 15, 18 (10th Cir. 2010) (unpublished) (stating "conclusory and self-serving affidavits" do not serve as "objective evidence" upon which SJ may be based); *Thomas v. United States Bureau of Prisons*, 282 F. App'x 701, 704 (10th Cir. 2008) (unpublished) (relying on contemporaneous medical records over "conclusory and self-serving statements" in Plaintiff's affidavit); *Cahill v. Nye*, No. 99-3059, 2000 U.S. App LEXIS 2481, at *3-4 (10th Cir. Feb. 17, 2000) (unpublished) ("When 'the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.'" (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986))); *Oates v. Englund*, No. 99-1187, 1999 U.S. App. LEXIS 24645, at *3 (10th Cir. Oct. 4, 1999) (unpublished) (stating, when plaintiff "has offered nothing to support his conclusory and self-serving allegation," plaintiff's affidavit is "not sufficient to create a genuine issue of fact"). Plaintiff's declaration here, at odds with contemporaneous proof of his "essentially normal brain CT" result, (ECF No. 22 at 27), meeting with the contract attorney, (ECF No. 19-1), and ability to draft and submit sophisticated, intricately detailed pleadings, *Finlayson*, No. 2:15-CV-818-DAK, at ECF Nos. 1–3, is therefore not a compelling source of evidence to support tolling the period of limitation.

No. 22 at 33.); (2) Ten days after the fight, he received a CT scan because of his impairments from his head injuries--i.e., "slurring of words and stuttering"; "short term memory loss"; "loss of writing skills/fine motor skills"; "loss of all memories from 2-3 weeks prior to 3/3/2015"; "numbness/tingling on right side of body"; "cognitive/though processing/concentration impairment." (*Id.* at 33.); (3) "In April 2015, [Petitioner] met with the prison's contract attorney . . . and explained . . . [Petitioner's] need for his legal assistance in preparing [Petitioner's] state petition for writ of habeas corpus," and during the meeting the attorney "assured [Petitioner] that he would prepare and file [the state] petition on [Petitioner's] behalf." (*Id.* at 35.); (4) The contract attorney never filed the state petition and strung Petitioner along for "at least . . . 150 days," then "failed to return [Petitioner's] crucial legal records . . . from trial and . . . direct appeal," which "impeded [Petitioner's] ability to file [his] state habeas petition in a timely manner." (*Id.*) (5) "When I was . . . hospitalized on 8/8/2017, all of my legal records and other legal materials were confiscated by prison administrative authorities and were never returned to me." (*Id.* at 39.)

  **b.  Alleged Mental Impairment**

Petitioner contends that his head injury of March 3, 2015 left him with physical and mental side effects that made it impossible for him to timely file his state PCP. Therefore, he argues, the first 259 days of the federal period of limitation that passed from May 25, 2015, when his direct appeal concluded, to February 8, 2016, when his state PCP was filed, should not count against the period of limitation.

However, "[e]quitable tolling of a limitations period based on mental incapacity is warranted only in exceptional circumstances that may include an adjudication of incompetence, institutionalization for mental incapacity, or evidence that the individual is not capable of pursuing his own claim because of mental incapacity."[23] Indeed, "'mental impairment is not *per se* a reason to toll a statute of limitations.'"[24] It is important to note that the Tenth Circuit "'has

---

[23] *Reupert v. Workman*, 45 F. App'x 852, 854 (10th Cir. 2002) (unpublished) (quotations omitted); *see also Del Rantz v. Hartley*, 577 F. App'x 805, 810 (10th Cir. 2014) (unpublished) ("[F]ederal courts equitably toll the limitations period only when there is a severe or profound mental impairment, such as resulting in institutionalization or adjudged mental incompetence.") (citing *Fisher*, 262 F.3d at 1143, 1145).
[24] *Del Rantz*, 577 F. App'x at 810 (quoting *Hunter v. Ferrell*, 587 F.3d 1304, 1308 (11th Cir. 2009)); *cf. Saenz-Jurado v. Colorado*, 329 F. App'x 197, 199 (10th Cir. 2009) (rejecting mental illness as basis for equitable tolling when Petitioner's "allegations on this point are conclusory and lack support in the record").

yet to apply equitable tolling on the basis of mental incapacity.'"[25] Finally, "'it is not enough for a party to show that he experienced extraordinary circumstances. He must further demonstrate that those circumstances caused him to miss the original filing deadline.'"[26]

Petitioner has not met his burden here; that is, he has not specified the existence of an incompetence adjudication, institutionalization, or complete incapability, and linked such circumstances to actual dates and lack of mental capacity. First, obviously, Petitioner did not even miss the original filing deadline for the state PCP, which he timely filed.[27]

Second, beyond an extremely belated self-serving declaration, he has not even hinted at an adjudication, institutionalization, or evidence that, for the entire period between May 25, 2015 and February 23, 2016, he suffered from such mental incapacity that it was *impossible* for him to pursue habeas claims. He has not specified how he was able to file a habeas case on February 23, 2016, but was not able to do so during the 259 days before.[28]

Third, he has not explained how—165 days into the federal period of limitation, on November 18, 2015—with the three alleged traumatic brain injuries, he was able to start filing a flurry of sophisticated and intricately detailed pleadings to initiate a different § 2254 action in this very court.[29] These approximately 200 pages of pleadings clearly would have taken at the very least weeks of preparation before November 18, 2015. Such "state-court filings . . .

---

[25] *Del Rantz,* 577 F. App'x at 810 (quoting *McCall v. Wyo. Att'y Gen.*, 339 F. App'x 848, 850 (10th Cir. 2009)); *see also United States v. Howard*, 800 F. App'x 679, 680 (10th Cir. 2020) ("We have never found equitable tolling based on a claimant's mental capacity.").
[26] *Del Rantz*, 577 F. App'x at 811 (quoting *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011)).
[27] *See* Utah Code Ann. § 78B-9-107(1) (2022) ("A petitioner is entitled to relief only if the petition is filed within one year after the day on which the cause of action has accrued.").
[28] *See Sampson v. Patton*, 598 F. App'x 573, 575–76 (10th Cir. 2015) (denying equitable tolling based on assertion of mental illness when Petitioner did not specify or provide evidence of timeline of mental incapacitation); *Rawlins v. Newton-Embry*, 352 F. App'x 273, 275–76 (10th Cir. 2009) (unpublished) ("[Petitioner] does not provide a date or even a month to narrow the time frame--she does not state when this nervous breakdown began, how long it lasted, or describe her level of impairment during this period."); *Brown v. Dinwiddie*, 280 F. App'x 713, 715 (10th Cir. 2008) (unpublished) (rejecting equitable tolling when lack of specific timeline linking mental illness to inability to pursue habeas claims).
[29] *See Finlayson*, No. 2:15-CV-818-DAK, at ECF Nos. 1–3.

11

demonstrate [Petitioner's] ability to raise and litigate legal arguments for relief during the relevant time period."[30]

For all of the foregoing reasons, Petitioner's argument for equitable tolling is rejected.

### c. Alleged Contract-Attorney Malfeasance

Petitioner maintains that he requested prison contract-attorney assistance with his state habeas petition and received assurance of help, which never came.[31] And, he contends, he relied on those "affirmative misrepresentations," particularly because of his alleged brain injuries, to his detriment, because time passed while he waited in vain for the promised help.[32]

Petitioner thus asserts his lateness should be overlooked because he lacked legal resources and legal knowledge and had only a false offer of help from the prison contract attorney. However, the argument that a prisoner had inadequate legal resources does not support equitable tolling.[33] Further, it is well settled that "'ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing.'"[34] Finally, simply put, "'[t]here is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings.'"[35]

---

[30] *Fisher v. Pacheco*, No. 21-8070, 2022 U.S. App. LEXIS 3871, at *5 (10th Cir. Feb. 11, 2022); *see also Del Rantz*, 577 F. App'x at 810-11 (concluding petitioner's "mental conditions did not stand in the way of his timely seeking federal habeas relief" when among other things he was able to litigate in state court before filing his federal petition); *Hendricks v. Howard*, 284 F. App'x 590, 591 (10th Cir. 2008) (denying equitable tolling based on mental incapacity when petitioner "was able to pursue state court post-conviction relief shortly after the AEDPA limitations period ended" and his "allegations regarding his mental condition were conclusory").
[31] ECF No. 21 at 23.
[32] *Id.*
[33] *McCarley v. Ward*, 143 F. App'x 913, 914 (10th Cir. 2005); *see also Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998) ("It is not enough to say that the . . . facility lacked all relevant statutes and case law or that the procedure to request specific materials was inadequate.").
[34] *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) (citation omitted).
[35] *Thomas v. Gibson*, 218 F.3d 1213, 1222 (10th Cir. 2000) (quoting *Coleman v. Thompson*, 501 U.S. 722, 752 (1991) (citations omitted)); *see also* 28 U.S.C.S. § 2254(i) (2021) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.").

It follows that Petitioner's contention that the prison contract attorney's lack of help thwarted his timely habeas filings does not toll the period of limitation.[36]

This is bolstered by evidence provided by Petitioner that, on December 16, 2015, he met with a contract attorney and received a state-post-conviction packet.[37] This suggests that (a) Petitioner, not the contract attorney, would be preparing the PCP; and (b) that the PCP packet was provided in plenty of time before the state limitation period's expiration. Yet, Petitioner himself made the choice to wait to *timely* file his state PCP until February 23, 2016.[38] Further, it is obvious that Petitioner had the knowledge and tools to file before February 23, 2016, considering the sophisticated and intricately detailed and lengthy federal habeas pleadings he filed in this court in November 2015.

This is different from the *Fleming* case on which Petitioner relies.[39] There, the court acknowledged that "sufficiently egregious misconduct on the part of a habeas petitioner's counsel may justify equitable tolling of the . . . limitations period."[40] Immediately, an important distinction jumps out: In *Fleming*, counsel was specifically retained by the petitioner,[41] unlike here where the contract attorney was not representing Petitioner. So in *Fleming*, it made sense for the petitioner to rely on counsel's assurances—until it was too late—because counsel was

---

[36] *See, e.g., Fleming v. Evans,* 481 F.3d 1249, 1255–56 (10th Cir. 2007) ("'The rationale is that attorney negligence is not extraordinary and clients, even if incarcerated, must "vigilantly oversee," and ultimately bear responsibility for, their attorneys' actions or failures.'" (quoting *Modrowski v. Mote*, 322 F.3d 965, 958 (7th Cir. 2003))); *Rouse v. Lee*, 339 F.3d 238, 248 (4th Cir. 2003) ("[A] mistake by a party's counsel in interpreting a statute of limitations does not present the extraordinary circumstance beyond the party's control where equity should step in to give the party the benefit of his erroneous understanding." (quotation omitted)); *Merritt v. Blaine*, 326 F.3d 157, 169 (3d Cir. 2003) (applying general rule that "attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the extraordinary circumstances required for equitable tolling" (quotation omitted)); *Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000) ("An attorney's miscalculation of the limitations period or mistake is not a basis for equitable tolling.").
[37] ECF No. 19-1. This was after another meeting with the contract attorney on October 16, 2015, when Petitioner was given specific information on the federal period of limitation.
[38] ECF No. 10-3, at 1.
[39] *See Fleming*, 481 F.3d at 1249.
[40] *Id.* at 1256.
[41] *Id.* at 1257.

specifically hired to draft the petition.[42] Meanwhile, the contract attorney consulting with Petitioner let him know by December 16, 2015, at the least, that the contract attorney would not be preparing the PCP, but had given Petitioner the basic tools for doing it himself.[43] Also, though Petitioner says that the contract attorney kept telling him and misrepresenting to him that the contract attorney would draft the PCP, again, Petitioner would have known more than two months (at least) before he filed that the contract attorney would not be drafting the PCP.[44]

For all of these reasons, Petitioner's issues with the contract attorney do not constitute exceptional circumstances warranting equitable tolling.

        **d.**        **Alleged Loss and Destruction of Crucial Legal Records**

Petitioner asserts that property-inventory-record forms show that his "legal records and other legal material were confiscated by the prison administration at CUCF" on August 8, 2017, and not returned to him on August 27, 2017.[45] He goes on to state that he then spent "from September, 2017 until June, 2019," trying "to locate and re-obtain said records."[46] He summarizes, "In light of the prison's above-referenced loss and destruction of Petitioner's legal records and legal materials, he provably qualifies for equitable tolling of nearly two years . . . because he has encountered extraordinary circumstances beyond his control making timely filing impossible."[47]

However, Petitioner's argument is without merit. As the above section, titled, "Timeline of Facts Relevant to Equitable-Tolling Argument," sets forth in detail, even assuming Petitioner

---

[42] *Fleming*, 481 F.3d at 1257.
[43] ECF No. 19-1.
[44] *See id*.
[45] ECF No. 21 at 6–7.
[46] *Id.* at 24.
[47] *Id.* Petitioner also provides evidence showing he was deprived of a book for an unknown period. (ECF No. 30 at 4.) But he does not state how that book kept him from timely filing. The book is thus not discussed further.

lost all his legal records and materials in August 2017, he still gained sufficient legal documents and resources over the course of September 18, 2017 (within weeks of allegedly losing his legal materials) through December 6, 2018 (when the period of limitation expired) to make his drafting and filing of his federal habeas petition possible by December 6, 2018.

Specifically, at least starting on September 18, 2017, Petitioner began rebuilding his cache of legal materials, when he was sent the docket in his state PCP case.[48] This was followed by a copy of the state trial court's memorandum decision from September 8, 2017, sent to Petitioner at USP on September 27, 2017.[49] And on December 29, 2017, the court granted Petitioner's "request for photocopies of his 65B petition."[50] On February 28, 2019, Petitioner's request for a copy of his PCP docket was granted.[51] Letters from the state courts were sent on April 3, 2018, May 21, 2018, June 22, 2018, and July 30, 2018.[52] As detailed by the court in the timeline set forth earlier, the motions and documents filed by Petitioner in his state PCP proceedings and another habeas case in this court (with counsel)—showing Petitioner's active participation and unfailing attentiveness to next steps, throughout the period from September 8, 2017 to December 6, 2018—refute Petitioner's claim of lacking legal records and materials sufficient to pursue this federal petition in a timely manner.

This record evidence does not meet the high bar of "extraordinary circumstances."[53] For instance, *Gabaldon* found such a situation existed when all legal documents were confiscated a mere "six weeks before the expiration of the limitations period."[54] *Gabaldon* quoted with

---

[48] ECF No. 10-3 at 3.
[49] *Id.*
[50] *Id.* at 4–5.
[51] *Id.* at 5.
[52] *Id.* at 5–6.
[53] *United States v. Gabaldon*, 522 F.3d 1121, 1124 (10th Cir. 2008) (quoting *Gibson*, 232 F.3d at 808).
[54] *Id.* at 1125.

approval from *Valverde v. Stinson*, 224 F.3d 129, 133 (2d Cir. 2000), in which the Second Circuit "held that 'the confiscation of a prisoner's legal papers by a corrections officer shortly before the filing deadline may justify equitable tolling and permit the filing of a petition after the statute of limitations ordinarily would have run.'"[55] Here, the legal materials allegedly confiscated were taken about one year and four months before the filing deadline in federal court.

Because federal claims brought in a federal habeas petition must first be exhausted in state court,[56] Petitioner had everything he needed to draft an adequate federal petition, once he received copies of the documents he is on record as receiving—e.g., his state PCP, the State's summary-judgment motion and other filings; and state-court rulings.[57] And, again, it is clear from Petitioner's appropriate and timely responses that he was receiving these documents. He could not otherwise have responded and litigated as ably as he did.

Accordingly, the alleged confiscation of Petitioner's legal materials, about sixteen months before the federal filing deadline, was not an extraordinary circumstance justifying equitable tolling.

      e.      **Conclusion**

Petitioner's arguments for the application of equitable tolling to save him from the running of the federal habeas limitation period are belied by the facts supplied by the parties' evidentiary submissions, primarily the information about his litigation. The history of Petitioner's three cases in this court shows his keen understanding of legal procedure, and savvy

---

[55] *Gabaldon*, 522 F.3d at 1125 (quoting *Valverde*, 224 F.3d at 133–34).
[56] *Picard v. Connor*, 404 U.S. 270, 278 (1971).
[57] ECF No. 10-3, at 4–6.

advocacy, which contradict his arguments that he was prejudicially hobbled in timely filing this litigation by lack of mental ability, contract-attorney help, and legal records and materials.

### 2. Actual Innocence

Petitioner insists his lateness is excused because he is actually innocent of each of the three crimes for which he was convicted.

Thus, Petitioner "seeks an equitable exception," based on actual innocence.[58] To validly "claim actual innocence a petitioner must present new, reliable evidence that was not presented at [or available for] trial. Such evidence typically consists of 'exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence.'"[59] Further, this evidence must "affirmatively demonstrate . . . innocence," not just "undermine the finding of guilt."[60] After presenting such evidence, a petitioner must then "show that in light of the new evidence, 'no reasonable juror would have found the defendant guilty.'"[61] Such evidence is so very rare that "in virtually every case, the allegation of actual innocence has been summarily rejected."[62]

Regarding "damage to or interruption of communication device," Petitioner's arguments do not even purport to offer newly discovered evidence, but instead discuss (without supporting references or evidence) how the victim's phone fell in the toilet and was "therefore temporarily not able to be classified as a 'communication' device."[63] This argument goes more to legal innocence, as opposed to actual innocence.[64] Petitioner appears to concede that he may have kept

---

[58] *See Fontenot*, 4 F.4th at 1034 (quotation marks and citation omitted).
[59] *Rose v. Newton-Embry*, 194 F. App'x 500, 502 (10th Cir. 2006) (unpublished) (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)).
[60] *Ballinger v. Kerby*, 3 F.3d 1371, 1375 (1993).
[61] *See Rose*, 194 F. App'x at 502 (quoting *Schlup*, 513 U.S. at 329).
[62] *Schlup*, 513 U.S. at 324.
[63] ECF No. 21 at 9–11.
[64] *See House v. United States*, No. CV 13-583, 2013 U. S. Dist. LEXIS 124067, at *11 (C.D. Cal. July 26, 2013) ("Petitioner does not [even] allege that he did not commit the acts underlying his conviction, much less provide any evidence to prove his factual innocence."); *see also Bousley v. United States*, 523 U.S. 614, 623 (1998) ("'[A]ctual innocence' means factual innocence, not mere legal insufficiency.").

the victim from using the phone but it was arguably not operational as a communication device in that moment. Actual innocence, instead, would involve Petitioner never keeping the victim from the phone in the first place, whether or not it was operational.

Regarding "aggravated assault," Petitioner's arguments do not offer newly discovered evidence, but instead discuss how police photographs (allegedly showing the victim's lack of injury) and the victim's testimony at his preliminary hearing and trial undercut the evidence supporting his conviction.[65] He essentially asks the court to take a fresh look at the evidence from trial.[66] He inexplicably calls the victim's preliminary-hearing testimony and the Utah Code "new pieces of evidence."[67] This is not new, reliable evidence that would make it so no reasonable jury would find Petitioner guilty.

Regarding "aggravated kidnapping," Petitioner's arguments do not offer newly discovered evidence, but instead discuss how, "throughout two (2) preliminary hearings and a bench trial, [the victim] repeatedly contradicted and denied every detail of her initial report to police," thus undermining the evidence supporting his conviction.[68] Petitioner refers to "readily available evidence that was never presented due [to] deficient counsel," but does not describe that evidence.[69] Petitioner's attempt to impeach the victim's testimony is not new evidence.

As to all of the above, Petitioner requests discovery and an evidentiary hearing in this court to consider his evidentiary arguments anew.[70] It is axiomatic that this is not a federal habeas court's province. Still, Petitioner argues that, because the prison lost his legal records, he should have a fresh chance to develop his evidence. But he has clearly noted that all the evidence

---

[65] *Id.* at 11–16.
[66] *Id.* at 13.
[67] *Id.* at 16.
[68] *Id.* at 17–20.
[69] *Id.* at 19.
[70] *Id.* at 20.

to which he refers under each crime category was already presented in state-court proceedings. Regardless, then, if his original legal records regarding those convictions were lost, Petitioner has not suggested any new, reliable evidence to be uncovered, much less such evidence that would show his innocence and make it so no reasonable juror would find him guilty.

This is true even under the Tenth Circuit's recently adopted "newly presented" standard over the "newly discovered through diligence" standard.[71] The testimony and pictures cited by Petitioner were already *presented* in the trial court on the record before the sentence was announced and therefore do not qualify as "newly presented."[72] And, even if the evidence qualified as newly presented, "[s]imply maintaining one's innocence, or even casting some doubt on witness credibility, does not necessarily satisfy th[e demanding *Schlup*] standard" for new evidence.[73]

The court thus rejects actual innocence as a basis for an equitable exception to the running of the period of limitation. In sum, there is no new evidence, much less the kind of new evidence that would prevent a jury from finding him guilty. Petitioner's rehashing of evidence and alleged civil-rights violations do not provide proper support for application of the actual-innocence exception.[74]

### 3. Summary

Petitioner has not met his burden of showing that--during the running of the federal period of limitation and beyond--he faced extraordinary circumstances that stopped him from

---

[71] *See Fontenot*, 4 F.4th at 1032 (10th Cir. 2021).
[72] *See id.* at 1034.
[73] *Frost v. Pryor*, 749 F.3d 1212, 1232 (10th Cir. 2014); *see also Stafford v. Saffle*, 34 F.3d 1557, 1561 (10th Cir. 1994) (stating "corroborating evidence, impeaching evidence, or evidence merely raising some suspicion or doubt of . . . guilt" is not "persuasive evidence of 'actual innocence'").
[74] *See Taylor v. Powell*, 7 F.4th 920, 927 (10th Cir. 2021) ("An actual innocence claim must be based on more than the petitioner's speculations and conjectures.").

timely filing or that he took specific steps to "'diligently pursue his federal claims.'" *Id.* at 930. Nor has he shown actual innocence. Accordingly, equitable tolling does not apply here.

## III.    CERTIFICATE OF APPEALABILITY

The court next considers whether to issue a certificate of appealability (COA).[75] When a habeas petition is denied on procedural grounds, as this one is, a petitioner is entitled to a COA only if he shows that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling."[76] Petitioner has not made this showing.

## IV.    CONCLUSION

Petitioner unjustifiably delayed filing his habeas-corpus petition until August 5, 2019--242 days past the limitation period's expiration. And neither equitable tolling nor actual innocence applies to refresh his untimely filing.

**IT IS THEREFORE ORDERED** that Respondent's Motion to Dismiss is **GRANTED**. (ECF No. 10.)

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

This action is **CLOSED**.

DATED this 7th day of April, 2022.

BY THE COURT:

_____
JUDGE DAVID BARLOW
United States District Court

---

[75] *See* R.11, Rs. Governing § 2254 Cases in the United States District Courts ("The district court must issue or deny a [COA] when it enters a final order adverse to the applicant.").
[76] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing 28 U.S.C.S. § 2253 (2020)).